UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA BALCAZAR,<br><br>          Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>          Defendant. | Case No. 1:24-cv-00305-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 13) |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for supplemental security income benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 11).

Plaintiff argues as follows:

1. The ALJ erred by finding Dr. Mariano's opinion unpersuasive without proper consideration of the supportability and consistency of the opinion with the record.

2. The ALJ's residual functional capacity determination fails to comply with the directives of Chavez v. Bowen and AR 97-4(9), and erroneously substituted her lay opinion of the record for that of the medical experts.

(ECF No. 13, p. 8).

Having reviewed the record, administrative transcript, the parties' briefs, and the applicable law, the Court finds as follows.

## I. ANALYSIS

### A. Medical Opinion

#### 1. Parties' arguments

Plaintiff argues that the ALJ erred in deeming Dr. Romeo Mariano's opinions unpersuasive without properly considering the supportability and consistency factors. (ECF No. 13, pp. 10-13). Defendant argues that the ALJ properly considered these factors in discounting Dr. Mariano's opinion. (ECF No. 18, pp. 6-8).

#### 2. Background

Dr. Mariano is a psychiatrist who treated Plaintiff and offered opinions as to her mental limitations. In deeming Dr. Mariano's opinions "not persuasive," the ALJ stated as follows:

> On March 18 and July 21, 2020, February 9 and August 14, 2021, August 6, 2022, and September 15, 2023, the claimant's own medical source, Dr. Mariano, a psychiatrist, offered the opinion that the claimant was markedly limited (where markedly limited was defined as "unable to meet competitive standards") in the ability to: remember locations, remember work-like procedures, understand and remember very short and simple instructions, understand and remember detailed instructions, carry out very short and simple instructions, carry out detailed instructions, maintain attention for two-hour time segments, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual withing customary and usually strict tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically-based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, interact appropriately with the general public, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, deal with normal work stress, be aware of hazards and take appropriate precautions, set realistic goals or make plans independently of others, travel in unfamiliar places, or use public transportation (Ex. C10F/27, 57-58 and 194-195, and C21F/8-9, 38-39 and 68-69). In connection with a prior claim in 2018, this psychiatrist previously

offered the opinion that the claimant had poor ability to understand, remember and carry out simple or complex instructions; maintain concentration, attention and persistence; perform activities within a schedule and maintain regular attendance; complete a normal workday and workweek without interruptions form psychologically based symptoms; interact appropriately with the public, supervisors or coworkers; and respond appropriately to changes in a work setting (Ex. C9F/2-5). These opinions are not persuasive because they are not supported by the fairly benign mental status examination findings of this psychiatrist, or the lengthy list of the claimant's strengths provided by this psychiatrist when he previously offered the list of marked limitations (Ex. C10F/138-139). Further, evidence of record is more consistent with a finding that the claimant would be limited to unskilled work with no more than occasional interaction with the public as noted above (Ex. C10F, C13F, and C21F).

(A.R. 31).

Elsewhere, the ALJ noted record evidence that was later used to formulate the RFC and to conclude that Plaintiff was not disabled. For example, the ALJ noted that, at an appointment with Dr. Mariano,

> [o]bjective mental status examination showed the claimant was casually dressed with fair personal hygiene, no motor abnormality, and she was calm, cooperative, and friendly in manner. Her speech was normal, well-organized, and goal directed. Her mood was sad, anxious and tearful at times, but she was able to calm down as the interview progressed and smile appropriately, and her affect was full range, appropriate and stable. She was described as awake with stable level of consciousness, she recalled recent events, and she was oriented to person, place and time. She had good insight, good awareness of illness, and fair common sense judgment.

(A.R. 27). And at a later appointment, Plaintiff was noted to have improved "but still only partially adherent to treatment." (A.R. 27).

Additionally, the ALJ deemed other medical opinions generally persuasive as to Plaintiff's mental limitations:

> The State agency psychologist who reviewed this claim at the initial level on August 23, 2021 offered the prior administrative medical finding that the claimant was able to understand and remember simple instructions; able to complete simple instructions, follow directions without additional assistance once a task is learned, and maintain adequate attention, concentration, persistence and pace as needed to complete a full work day/work week; able to maintain appropriate behavior with others; is capable of accepting simple instructions and responding appropriately to feedback from supervisors; and able to be aware of ordinary hazards, make simple decisions, utilize transportation, and cope with the demands of a routine work-like environment (Ex. C7A/22-25). The State agency psychologist who reviewed this

> claim at the reconsideration level on December 22, 2021 affirmed this prior administrative medical finding (Ex. C9A/22-25). This prior administrative medical finding is generally persuasive because these psychologists are considered highly qualified sources that are also experts in the evaluation of medical issues in disability claims under the Social Security Act as noted in SSR 17-2p and they provided supporting statements with reference to evidence of record. However, in addition to the limitation to unskilled work, the evidence of record is consistent with a finding that the claimant should have no more than occasional interaction with the public as a result of her reported irritability and objectively noted anxious and/or depressed mood. She would not be further limited because, other than the mood abnormalities identified on mental status examination by her treating psychiatrist, the claimant's objective mental status examination findings have been fairly unremarkable overall. The claimant's sub-average IQ scores would be accommodated within a[] residual functional capacity or unskilled work because the evidence of record does not objectively demonstrate problems with concentration, persistence, and pace sufficient to preclude unskilled work (Ex. C10F, C13F, and C21F).
>
> On August 2, 2021, a consulting psychologist offered the opinion that the claimant was moderately limited in the ability to perform detailed and complex tasks; mildly limited in the ability to maintain regular attendance in the workplace, perform work activities on a consistent basis, perform work activities without special or additional supervision, interacting with coworkers and the public, and dealing with the usual stresses encountered in a competitive work environment; and no significant limitation in the ability to perform simple and repetitive tasks, complete a normal workday and workweek without interruptions from her psychiatric conditions, and accept instructions from supervisors (Ex. C13F/7-8). This opinion is generally persuasive because a limitation to unskilled work is consistent with the examination of this psychologist, but the evidence of record is consistent with additional limitations with regard to public interaction as noted above (Ex. C10F, C13F, and C21F).

(A.R. 30).

### 3. Legal standards

Because Plaintiff applied for benefits in 2021, certain regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. (A.R. 17). These regulations set "supportability" and "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assignment of specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions"

and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

As for the case authority preceding the new regulations that required an ALJ to provide clear and convincing or specific and legitimate reasons for rejecting certain medical opinions, the Ninth Circuit has concluded that it does not apply to claims governed by the new regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787. Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted).

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim. *Id.* § 404.1520c(c)(2).

*Id.* at 791-92.

**4.    Analysis**

Plaintiff argues that the ALJ cherry-picked the evidence to support the RFC. True, an ALJ is not permitted to "selectively" rely on evidence to find a claimant not disabled, while "ignor[ing]" evidence favorable to the claimant. *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001). However, such is not the case here. Importantly, the ALJ acknowledged Plaintiff's mental health issues but ultimately concluded that other evidence, including Plaintiff's objective mental status examinations showing cooperative behavior, stable consciousness, and normal orientation, warranted discounting Dr. Mariano's opinions of extreme limitations. While Plaintiff argues that certain records could support a different conclusion as to the evidence, this at most amounts to another "rational interpretation," meaning that "the decision of the ALJ must be upheld. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995).

Likewise, the Court rejects Plaintiff's argument that the ALJ failed to properly analyze whether Dr. Mariano's opinion was consistent with the record. The ALJ stated that other record evidence discussed in the opinion was more consistent with the RFC. (A.R. 31). This discussion of other evidence included the opinions of state psychologists and a consulting psychologist who all opined that Plaintiff was far less limited than what Dr. Mariano suggested, with the ALJ deeming these opinions generally persuasive.

In short, both the medical record and opinion evidence supported an RFC at odds with Dr. Mariano's assessment of extreme limitations. Accordingly, the Court concludes that the ALJ's review of Dr. Mariano's opinion was supported by substantial evidence after consideration of the supportability and consistency factors.

**B.    Res Judicata**

**1.    Parties' arguments**

Plaintiff argues (1) that the ALJ should have given res judicata effect to upper-extremity limitations from the RFC in her 2015 social security case and (2) that her current RFC was based on the ALJ's own interpretation of medical evidence. (ECF No. 13, pp. 8-10). Defendant argues (1) that res judicata principles do not apply because there has been a change in the law between the 2015 decision and the current decision and (2) that the RFC need not be based on professional

medical opinion because the ALJ is responsible for formulating the RFC and "[t]he Ninth Circuit has no objection to an ALJ interpreting 'raw medical data.'" (ECF No. 18, p. 5).

### 2. Background

The parties' first dispute centers around the difference between the RFCs formulated in Plaintiff's prior application (decided in 2015) and her current application.

**2015 RFC**

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: she can lift and carry twenty pounds occasionally and ten pounds frequently; she can stand and walk, with normal breaks, for a total of six hours in an eight-hour workday; she can sit, with normal breaks, for a total of six hours in an eight-hour workday; *she can occasionally push and pull with upper extremities*; she can occasionally climb ramps and stairs, but she must never climb ladders, ropes, or scaffolds; she can occasionally stoop, kneel, and crouch, but she must never crawl; *she can occasionally reach bilaterally; she can occasionally handle and finger bilaterally*; and she can perform simple, routine tasks.

(A.R. 121) (emphasis added).

**Current RFC**

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can lift and/or carry 20 pounds occasionally and ten pounds frequently, with no restrictions on sitting, standing, or walking. She can occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, or crouch; and never crawl. She can never work in the presence of unprotected heights or hazardous machinery. *She can frequently reach in all directions bilaterally, handle bilaterally, and finger bilaterally*. The claimant is limited to performing simple routine tasks and can use judgment for that type of work, and deal with changes in the work setting consistent with simple work and simple work-related decisions. She can have no more than occasional interaction with the public, but there are no limitations on interaction with coworkers and supervisors.

(A.R. 24) (emphasis added).

Here, the ALJ ultimately declined to give res judicata effect to the 2015 opinion, stating as follows:

> In the most recent prior decision, the claimant was found not disabled because the claimant was capable of performing other work. As a result, with respect to the unadjudicated period under the current application for a period of disability and

> disability insurance benefits, there is a rebuttable presumption of continuing nondisability under the Chavez Acquiescence Ruling (Social Security Acquiescence Ruling (AR) 97-4(9)). The claimant may rebut this presumption by showing a "changed circumstance" affecting the issue of disability with respect to the unadjudicated period. If there is a changed circumstance, the undersigned must adopt the findings from the final decision on the prior claim in determining whether or not the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, Regulations or rulings affecting the finding or the method for arriving at the finding. The undersigned finds there has been a showing of a changed circumstance material to the determination of disability and the presumption of continuing nondisability has been rebutted. There has been a material change in the law, Regulations or rulings affecting the finding or the method for arriving at the finding of disability since the 2017 decision, including changes in the musculoskeletal and mental listings. Accordingly, the undersigned does not give res judicata effect to the findings of the prior Administrative Law Judge decision under the sequential evaluation process for determining disability.

(A.R. 17-18).

Later in the decision, the ALJ concluded as follows:

> [Plaintiff] would be restricted to frequent rather than occasional manipulation with her bilateral upper extremities because she has not sought additional treatment for her carpal tunnel syndrome, even though she testified she had insurance with no[] copayment, and she has not had regular complaints or sought treatment for her musculoskeletal allegations.

(A.R. 29).

The ALJ did not cite any medical opinion to explain the decision to find Plaintiff more capable than the 2015 RFC upper-extremity limitations.

### 3. Legal standards

A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). In

reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g).

In *Chavez*, the Ninth Circuit noted that "[t]he principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988) Under that case, a ALJ's finding of nondisability is entitled to a "presumption of continuing nondisability" in a later proceeding unless the claimant shows "'changed circumstances' indicating a greater disability." *Id.* "Changed circumstances [] include an increase in the severity of the claimant's impairment, the alleged existence of a new impairment, or a change in the criteria for determining disability." *Tallman v. Astrue*, No. 1:08-CV-01794-DLB, 2010 WL 395936, at *6 (E.D. Cal. Jan. 28, 2010) (citing Acquiescence Ruling (AR) 97-4(9)).[1]

> Following the Ninth Circuit's ruling in *Chavez*, the Social Security Administration ("SSA") adopted SSR 97–4(9) to explain how the SSA will apply *Chavez* within the Ninth Circuit. The ruling applies "only to cases involving a subsequent disability claim with an unadjudicated period arising under the same title of the Act as a prior claim on which there has been a final decision by an ALJ or the Appeals Council that the claimant is not disabled." SSR 97–4(9), 1997 WL 742758, at *3. The ruling directed adjudicators to follow a two-step inquiry. *Id.* First, adjudicators must apply a presumption of continuing non-disability. A "claimant may rebut this presumption by showing a 'changed circumstance' affecting the issue of disability with respect to the unadjudicated period." *Id.* Second, if the claimant rebuts the presumption, adjudicators must give effect to certain findings "contained in the final decision by an ALJ or the Appeals Council on the prior claim, when adjudicating the subsequent claim," including the findings of a claimant's RFC, education, or work experience. *Id.* "Adjudicators must adopt such a finding from the final decision on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." *Id.*

*Smith-Scruggs v. Astrue*, No. CV 09-4443-OP, 2010 WL 256546, at *2 (C.D. Cal. Jan. 21, 2010).

\\\

---

[1] "An 'Acquiescence Ruling' is an announcement from the SSA explaining how it will apply a decision from a Federal circuit court that it views as inconsistent with its own national policies for adjudicating Title II and Title XVI disability claims." *Carbajal v. Berryhill*, No. EDCV 16-02076 JDE, 2017 WL 2603300, at *8 n.1 (C.D. Cal. June 15, 2017).

**4. Analysis**

    **a. Res judicata**

With the above legal standards and background in mind, the Court turns to the parties' arguments, beginning with res judicata.

Plaintiff contends that the ALJ failed to explain why the current RFC did not include the 2015 limitation that "she can occasionally push and pull with upper extremities" and explain why she could now "*frequently* reach in all directions bilaterally, handle bilaterally, and finger bilaterally" as opposed to the 2015 RFC that concluded that she could only "*occasionally* reach bilaterally" and could only "*occasionally* handle and finger bilaterally." (ECF No. 13, p. 9, citing A.R. 24, 121) (emphasis added).

Defendant argues that, because there has been a change in the law between the 2015 decision and the current ALJ's decision—"[t]he regulations used to evaluate medical opinions changed in 2017"—res judicata principles do not apply. (ECF No. 18, p. 4). Further, Defendant contends that "the ALJ also explained why she found that Plaintiff was capable of frequent reaching, handling, and fingering: Plaintiff had not sought treatment for carpal tunnel syndrome or musculoskeletal conditions (Tr. 29)" and thus "[i]t was reasonable to conclude that this contradicted the prior administrative medical findings on these issues." (*Id.* at 5).

Upon review, the Court agrees with Plaintiff that the ALJ failed to provide a sufficient explanation as to why the ALJ declined to give res judicata effect to the 2015 upper-extremity limitations.

Here, the ALJ concluded that "there has been a showing of a changed circumstance material to the determination of disability and the presumption of continuing nondisability has been rebutted." (A.R. 18). But even where there is no presumption of continuing nondisability, an ALJ "must give effect to certain findings," pertinent here the 2015 RFC, "unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." AR 97-4(9), available at 1997 WL 742758.

Here, the ALJ stated there had "been a material change in the law, [r]egulations or rulings

affecting the finding or the method for arriving at the finding of disability since the 2017 decision, including changes in the musculoskeletal and mental listings." (A.R. 18). Beyond referencing unspecified changes in the musculoskeletal and mental listings, which neither party argues are applicable here, the ALJ failed to point to any changed regulations or ruling, let alone explain how any change affected the 2015 RFC relating to Plaintiff's upper-extremity limitations.

Defendant argues that the regulations used to evaluate medical opinions changed in 2017 (which is correct as discussed above in connection with Plaintiff's first issue) and asserts that the ALJ was not required to adopt the 2015 RFC. Elaborating, Defendants states as follows:

> Thus, when evaluating the persuasiveness of the medical opinion evidence, the ALJ was not required to adopt the previous evaluation of the opinion evidence or the previous residual functional capacity. *Id.* For instance, the ALJ considered prior administrative medical findings from State agency physicians (Tr. 29). Those State agency physicians assessed that Plaintiff had some reaching limitations of unspecified duration, but had no handling or fingering limitations (Tr. 177, 207). Nonetheless, because of the prior ALJ decisions limiting Plaintiff to occasional reaching, handling, and fingering, the medical consultants adopted those same limitations (Tr. 177-78 ("alj adopted"), 207-08 (same)).

(ECF No. 18, p. 4).

But as Plaintiff points out, there are flaws with this argument. (*See* ECF No. 19). First, "[l]ong-standing principles of administrative law require [a court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). Here, the ALJ's opinion did not state that the 2017 changes to evaluating medical opinion testimony was a reason not to adopt the 2015 RFC.

Second, even had the ALJ relied on the 2017 changes to evaluating medical opinion, as Plaintiff points out, there is no indication in the record that the 2015 upper-extremity limitations derived from any medical opinion that the ALJ later decided to weigh differently. For example, there is no statement from the ALJ that, due to a change in the regulations, the ALJ decided to give less weight to a certain medical opinion that had previously been used to formulate the 2015 upper-extremity limitations.

As for the state agency doctors that adopted the 2015 RFC despite assessing "some

11

1 reaching limitations of unspecified duration but . . . no handling or fingering limitations," again

2 this rationale was not offered by the ALJ. Moreover, there is still no indication that the 2017

3 changes in regulations regarding medical opinion are at issue here. For example, Defendant does

4 not assert, nor does the prior ALJ opinion reflect, that any treating physician opinion was used to

5 formulate the upper-extremity limitations that the current ALJ declined to adopt.

6       This brings the Court to a related argument by Defendant, who states that "the ALJ also

7 explained why she found that Plaintiff was capable of frequent reaching, handling, and fingering:

8 Plaintiff had not sought treatment for carpal tunnel syndrome or musculoskeletal conditions (Tr.

9 29)" and thus "[i]t was reasonable to conclude that this contradicted the prior administrative

10 medical findings on these issues." (ECF No. 18, p. 5). But once again, Defendant fails to show

11 how the 2017 change in the regulations factored in at all, *e.g.*, by pointing to anything in the

12 ALJ's opinion to show that the ALJ weighed certain opinions differently based on the physician

13 hierarchy.

14       To the extent that Defendant is arguing that Plaintiff's lack of treatment "is new and

15 material evidence" under (AR 97-4(9)) to preclude res judicata effect of the 2015 RFC, this

16 argument also fails. "In general, the Commissioner bears the burden of establishing that a

17 claimant has experienced medical 'improvement' that would allow [the claimant] to engage in

18 substantial gainful activity." *Guerrero v. Kijakazi*, No. 1:20-CV-01766-SKO, 2022 WL 1811219,

19 at *7 (E.D. Cal. June 2, 2022). And the finding must be supported by substantial evidence. *Id.* at

20 8.

21       Here, the ALJ failed to specify what further treatment Plaintiff should have pursued for

22 her carpal tunnel. *Cf. Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir.

23 2008) ("[A]lthough a conservative course of treatment can undermine allegations of debilitating

24 pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has

25 a good reason for not seeking more aggressive treatment."); *Cortes v. Colvin*, No. 2:15-CV-2277

26 (GJS), 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016) ("[A]n ALJ errs in relying on

27 conservative treatment if the record does not reflect that more aggressive treatment options are

28 appropriate or available.") (internal quotation marks and citation omitted). Importantly, Plaintiff

had carpal tunnel surgery around 2006, which was already considered in the 2015 RFC. (A.R. 119, 779). Moreover, Plaintiff continued to complain of pain, tingling, and numbness in both her hands following the surgery. (A.R. 1133, 1431). In short, the ALJ failed to offer substantial evidence to show a change in Plaintiff's medical circumstances to justify finding her more capable in her upper extremities than the 2015 RFC.

### b. Lack of medical support

Plaintiff briefly offers a related argument, asserting that the ALJ relied on the ALJ's own lay knowledge of the medical record to increase her RFC. (ECF No. 13, p. 10). Defendant does not point to any medical opinion to support the increase in Plaintiff's upper-extremity limitations, but rather asserts that an ALJ does not have to do so because the ALJ is responsible for formulating the RFC and "[t]he Ninth Circuit has no objection to an ALJ interpreting 'raw medical data.'" (A.R. 18, p. 5).

Importantly, for the reasons described above, the ALJ's failure to adopt the upper-extremity limitations from the 2015 RFC is itself sufficient to remand this case. However, turning to the parties' specific dispute, it is true that "it is the ALJ's responsibility to formulate an RFC that is based on the record *as a whole*, and thus the RFC need not exactly match the opinion or findings of any particular medical source." *Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal. Aug. 22, 2014). However, "an ALJ is not allowed to make medical judgments, but only legal judgments based on medical evidence." *Duarte v. Saul*, No. 2:19-CV-01019 AC, 2020 WL 5257597, at *5 (E.D. Cal. Sept. 3, 2020); *see also Shipp v. Colvin*, No. CV 13-9468 JC, 2014 WL 4829035, at *7 (C.D. Cal. Sept. 26, 2014) ("Since, apart from Dr. Kim's Opinions, the record contains no assessment by a treating or examining doctor regarding the effect of plaintiff's physical impairments on her ability to function, it appears that the ALJ's physical residual functional capacity assessment was erroneously based solely on the ALJ's own, lay interpretation of plaintiff's testimony and other raw medical evidence in the record."); *see Penny v. Sullivan*, 2 F.3d 953, 958 (9th Cir. 1993) ("Without a personal medical evaluation it is almost impossible to assess the residual functional capacity of any individual."). Thus, the Court rejects Defendant's contention that an ALJ may interpret raw medical data such

as an MRI.[2] Because it is unknown what evidence, including medical opinion, supported the RFC, the ALJ's decision is not supported by substantial evidence.

In conclusion, it was error for the ALJ to decline to adopt the 2015 RFC's upper extremity limitations and the RFC is unsupported by substantial evidence. Accordingly, the Court will remand this case for further proceedings as specified below.[3]

## II. CONCLUSION AND ORDER

For the reasons given, the decision of the Commissioner of the Social Security Administration is REVERSED, in part, and REMANDED. On remand, the ALJ is directed to adopt the upper extremity limitations at issue from the 2015 RFC— that Plaintiff "can occasionally push and pull with upper extremities" and can only "occasionally reach bilaterally" and can only "occasionally handle and finger bilaterally"—under the doctrine of res judicata and to otherwise formulate an RFC that is supported by substantial evidence. Thereafter, the ALJ shall consider at Step Five whether there are jobs that exist that Plaintiff can perform.

The Clerk of Court is directed to enter judgment in favor of Plaintiff and against Defendant.

IT IS SO ORDERED.

Dated: **August 2, 2024**              /s/ Erica P. Grosjean
                                       UNITED STATES MAGISTRATE JUDGE

---

[2] The case Defendant that cites—*Woods*, 32 F.4th at 794—does not support Defendant's argument. That case makes a solitary reference to the ALJ relying on "fairly benign" MRI results to reject a medical opinion. *Id.* at 794. The case does not establish that the ALJ independently interpreted the MRI to conclude that the results were benign, nor does it endorse the idea than the ALJ may interpret raw medical data.

[3] Plaintiff does not request, nor does the Court find it appropriate, to remand this case for an award of benefits.